■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v ROGER STOKES, Appellant. — Appeal by defendant from a judgment of the Supreme Court, Kings County (Lodato, J.), rendered March 2, 1979, convicting him of robbery in the first degree, upon a jury verdict, and imposing sentence. The appeal brings up for review the denial, without a hearing, of defendant's motion to set aside the verdict and for a new trial on the ground of newly discovered evidence. Case remitted to Criminal Term to hear and report on defendant's motion to set aside the verdict and for a new trial in accordance with the memorandum herein. The appeal from the judgment will be held in abeyance in the interim. Criminal Term shall file its report with all convenient speed. Defendant was convicted of robbery in the first degree. The evidence presented at the trial indicates that defendant's conviction was based solely on the testimony of the complainant, John Bernieri. Bernieri testified that on March 4, 1978, at about 9:40 P.M., while he was walking on McDonald Avenue, between Ditmas Avenue and Avenue F in Brooklyn, he was robbed by three men, two of whom took his cassette tape player and some cash. Bernieri, who had never seen any of the robbers before, identified defendant as one of the perpetrators of the robbery, which occurred in about a minute. Twenty days after the incident, Bernieri returned to the location of the robbery and observed defendant and one of the other perpetrators. Bernieri called the police and defendant was subsequently arrested. At the trial, defendant did not testify nor did he present any evidence. Approximately two months after defendant's conviction, his trial counsel moved, pursuant to CPL 330.30 (subd 3), to set aside the verdict and for a new trial on the ground of newly discovered evidence. In support of the motion, counsel annexed a sworn statement by Tracy Stokes, defendant's nephew, dated February 2, 1979. Tracy deposed that on March 4, 1978, at about 9:30 P.M., on McDonald Avenue between Ditmas Avenue and Avenue F in Brooklyn, he had observed a young white man being robbed by three men. He had recognized one of the robbers, who he had seen previously, and was certain that none of the robbers was his uncle, the defendant. He further deposed that he had not come forth with this information earlier because he was afraid that the man he recognized, or that man's friends, "would get [him]." In his own affirmations, defense counsel averred that he had spoken with Tracy both before and during the trial. While Tracy had told him that defendant was innocent, Tracy refused to indicate the reason for his belief, despite diligent efforts by counsel to get a response from Tracy. It was not until after the trial that Tracy first told counsel how he knew that the defendant had not committed the crime. Counsel asserted that Tracy Stokes' affidavit constituted newly discovered evidence which (1) could not have been discovered at the trial even with due diligence and (2) created a probability

that, had such evidence been received at trial, "the verdict would have been more favorable to the defendant" (see CPL 330.30, subd 3). The People submitted papers in opposition to the motion, arguing, *inter alia,* that defendant had not exercised due diligence in discovering this evidence before the trial and that Tracy Stokes' testimony, if received, would merely contradict the testimony given by Bernieri, and would itself be subject to impeachment. On the day of sentencing, March 2, 1979, the trial court denied the motion from the Bench, without a hearing. The trial court stated that even if Tracy testified at a new trial it was not likely that the jury would render a different verdict, noting that Tracy's testimony related to the credibility of the complainant. Moreover, it was noted that Tracy, as well as defendant, had been available to testify at the trial, and should have done so. The trial court should not have denied the motion without a hearing. Tracy Stokes' proposed testimony does not constitute merely contradictory evidence, nor is it for the sole purpose of impeaching the complainant's testimony. Moreover, it is not that the "witness" is newly discovered, but it is the fact that since the trial, the witness has, for the first time, made statements which makes such evidence newly discovered (see, e.g., *People v Shilitano,* 218 NY 161, 170-171). Therefore, the question of whether the affidavit of Tracy Stokes was truthful "should have been determined at a hearing, where credibility could have been assessed on a more substantial basis than on a written statement, and where a more complete record, with testimony, would allow both the trial court and this court to more effectively weigh the impact such testimony might have had on the verdict. Only then could it be determined whether the evidence 'could not have been produced by the defendant at the trial even with due diligence on his part and *** is of such character as to create a probability that had such evidence been received at the trial the verdict would have been more favorable to the defendant' (CPL 330.30, subd 3)." (See *People v Daniels,* 48 AD2d 905, 906.) Hopkins, J. P., Titoné, Rabin and Weinstein, JJ., concur.