People v Stetin (2021 NY Slip Op 01529)





People v Stetin


2021 NY Slip Op 01529


Decided on March 18, 2021


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: March 18, 2021

110938 111945

[*1]The People of the State of New York, Respondent,
v
Christopher Stetin, Appellant.

Calendar Date: February 9, 2021

Before: Garry, P.J., Egan Jr., Pritzker, Reynolds Fitzgerald and Colangelo, JJ.


Hug Law, PLLC, Albany (Matthew C. Hug of counsel), for appellant.
Lorraine C. Diamond, District Attorney, Fonda (Christina Pearson of counsel), for respondent.



Pritzker, J.
Appeals, by permission, from two orders of the County Court of Montgomery County (Catena, J.), entered November 20, 2019 and February 28, 2019, which denied defendant's motions pursuant to CPL 440.10 to vacate a judgment convicting him of the crimes of burglary in the second degree and assault in the second degree, without a hearing.
After a jury trial in July 2017, defendant was found guilty of burglary in the second degree and assault in the second degree stemming from an incident in September 2016 in which defendant allegedly broke into the residence of his then-girlfriend and physically assaulted her. After an unsuccessful motion pursuant to CPL 330.30 (1) to set aside the verdict, defendant was sentenced to an aggregate term of four years in prison followed by five years of postrelease supervision. His conviction was later affirmed by this Court on appeal (167 AD3d 1245 [2018], lv denied 32 NY3d 1178 [2019]). In February 2019, defendant moved to vacate the judgment of conviction pursuant to CPL 440.10 (d), (g) and (h) on the grounds that he was denied the effective assistance of counsel and that newly discovered evidence was disclosed after entry of the judgment of conviction that would have resulted in a more favorable verdict. County Court denied this motion without a hearing. In October 2019, defendant moved again to vacate the judgment of conviction pursuant to CPL 440.10 (g) and (h) on the grounds that additional newly discovered evidence was disclosed after entry of the judgment of conviction that would have resulted in a more favorable verdict and that he was actually innocent. County Court also denied this motion without a hearing. This Court granted defendant permission to appeal both orders.
Defendant seeks relief under CPL 440.10 based upon ineffective assistance of counsel. Although the majority of these claims were properly rejected by County Court as the alleged deficiencies were raised and decided upon direct appeal (167 AD3d at 1249-1251), we agree with defendant that the court erred in denying, without a hearing, defendant's remaining claim of ineffective assistance based upon trial counsel's failure to conduct a proper investigation with respect to defendant's residence.
"To establish ineffective assistance, a defendant must demonstrate the absence of strategic or other legitimate explanations for counsel's allegedly deficient conduct" (People v Mosley, 121 AD3d 1169, 1173-1174 [2014] [internal quotation marks, brackets and citations omitted], lv denied 24 NY3d 1086 [2014]; see People v Caban, 5 NY3d 143, 152 [2005]). As to the failure to investigate, defendant alleges that a proper investigation by trial counsel would have established that he lived at the victim's residence and, thus, on the evidence presented at trial, he could not have entered unlawfully, a necessary element of burglary in the second degree. Defendant avers, in his sworn affidavit, that he repeatedly advised his trial counsel that the victim's [*2]allegation that defendant did not live with her at the time of the incident was false and that this false claim could be easily disproven, but trial counsel "was not interested and did nothing." Defendant supported this claim with four sworn affidavits of witnesses who all stated that defendant lived with the victim at the time of the incident. These affidavits were not merely conclusory, but rather contained factual allegations based upon firsthand observations by the witnesses (compare People v Spradlin, 188 AD3d 1454, 1460-1461 [2020]; People v Blanford, 179 AD3d 1388, 1394 [2020], lv denied 35 NY3d 968 [2020]). We find that defendant "provided sufficient sworn, material statements in support of his motion that, if credited, would establish that he received less than meaningful representation" (People v Sposito, 140 AD3d 1308, 1312-1313 [2016], affd 30 NY3d 1110 [2018]; see People v Cruz, 152 AD3d 822, 825 [2017], lv denied 30 NY3d 1018 [2017]).
County Court also erred in denying, without a hearing, defendant's claim that he is entitled to have the judgment of conviction vacated based upon newly discovered evidence, specifically, affidavits of three witnesses that the victim recanted her testimony. The court found that this recantation evidence was merely impeachment evidence, contradictory to eyewitness testimony and "inherently suspect." "A judgment of conviction may be vacated if the defendant shows that the newly discovered evidence fulfills all the following requirements: (1) it must be such as will probably change the result if a new trial is granted; (2) it must have been discovered since the trial; (3) it must be such as could have not been discovered before the trial by the exercise of due diligence; (4) it must be material to the issue; (5) it must not be cumulative to the former issue; and (6) it must not be merely impeaching or contradicting the former evidence" (People v Werkheiser, 171 AD3d 1297, 1303-1304 [2019] [internal quotation marks, brackets and citations omitted], lv denied 33 NY3d 1109 [2019]; see People v Shaw, 174 AD3d 1036, 1037-1038 [2019], lv dismissed 34 NY3d 1081 [2019]). As relevant here, "[w]ith respect to recantation evidence, the defendant bears the burden of rebutting the presumption of regularity that attached to the prior judicial proceeding by producing substantial evidence that the recanting witness's prior testimony was false" (People v Nelson, 171 AD3d 1251, 1253 [2019]; see People v Avery, 80 AD3d 982, 985 [2011], lv denied 17 NY3d 791 [2011]). "Consideration of recantation evidence involves the following factors: (1) the inherent believability of the substance of the recanting testimony; (2) the witness's demeanor both at trial and at the evidentiary hearing; (3) the existence of evidence corroborating the trial testimony; (4) the reasons offered for both the trial testimony and the recantation; (5) the importance of facts established at trial as reaffirmed in the recantation; and (6) the relationship [*3]between the witness and [the] defendant as related to a motive to lie" (People v Wong, 11 AD3d 724, 725-726 [2004], citing People v Shilitano, 218 NY 161, 170-172 [1916]).
In support of these claims, defendant proffered three separate affidavits from witnesses, as well as text messages purportedly from the victim, asserting that they established that the victim had fabricated the allegations against him. One of these witnesses, in a sworn affidavit, averred that she was friends with the victim and even attended the trial. This witness stated that, in June 2018, she was at the victim's apartment — which was the same apartment where the incident occurred — when the victim was texting and calling defendant. This same night, the victim told the witness that she lied to the police and in court because she was "mad at [defendant] over his constant complaining about [the victim's] drinking," that "none of the abuse" occurred and that she was afraid that her family would be mad if they learned that she lied. This witness averred that she subsequently stopped associating with the victim after several more conversations during which the victim admitted to fabricating the whole story. Another affidavit was proffered from an employee at a used car lot where the victim test drove a vehicle in the summer of 2017. During the test drive, after the employee asked the victim about her last name, she told the employee that it was her ex-husband's name and that he was very abusive and had recently broken her shoulder, an injury that she had attributed to defendant at trial. Another witness averred that one night, in May 2019, he saw the victim and when he told her that he did not believe that defendant harmed her, the victim said that she could not tell the truth for fear of going to prison.
Contrary to County Court's determination, we do not find that the evidence of the victim's recantations is "merely impeachment" evidence such that it does not constitute newly discovered evidence (see generally People v Salemi, 309 NY 208, 215-216 [1955], cert denied 350 US 950 [1956]). Indeed, "[e]vidence of recantation upon the part of a witness is not merely evidence which tends to impeach or discredit a witness. Its character is more fundamental. If the recantation be true it may in certain cases destroy the basis upon which the judgment of conviction rests" (People v Shilitano, 218 NY at 170; see generally People v Hargrove, 162 AD3d 25, 58-60 [2018]). Although we are mindful that recantation testimony is "inherently unreliable" (People v Riddick, 136 AD3d 1124, 1124 [2016], lv denied 27 NY3d 1154 [2016]), the "totality of the circumstances" presented here demonstrates that a hearing is required to scrutinize the circumstances regarding the recantations as well as the credibility of the witnesses, and to create a record (People v Jenkins, 84 AD3d 1403, 1407 [2011], lv denied 19 NY3d 1026 [2012]; see e.g. People v Krivak, 168 AD3d 979, 982 [2019]; People v Beach[*4], 186 AD2d 935, 936 [1992]; compare People v Beckingham, 116 AD3d 1298, 1299 [2014]).
Although County Court pointed to "eyewitness" testimony at trial that controverts the alleged recantations, this mischaracterizes the trial testimony. There was testimony from the victim's mother, who arrived after the attack, which placed defendant in the victim's home and described the victim's condition after the attack, but the victim's mother did not witness the actual attack (167 AD3d at 1246-1248). Thus, the information set forth in the witnesses' affidavits regarding the victim's recantations have not been "conclusively refuted by unquestionable documentary proof or contradicted by a court record or other official document and it cannot be said that there is no reasonable possibility that [it is] true" (People v Beach, 186 AD2d at 936 [internal citations omitted]; see CPL 440.30 [4] [c], [d] [i], [ii]). Moreover, the victim's alleged statement to the used car lot employee that her ex-husband broke her shoulder was not contradicted by the evidence at trial. To the contrary, the victim refused medical attention the night of the incident, instead waiting more than three weeks to seek medical attention for her fractured left clavicle (167 AD3d at 1247). Additionally, there was testimony at trial that the victim was observed carrying two 18 packs of beer shortly after the incident occurred (167 AD3d at 1247). Accordingly, County Court "was not permitted to reject the affidavit[s] as facially incredible; rather, an evidentiary hearing should have been conducted" (People v Beach, 186 AD2d at 936; see CPL 440.30 [4], [5]; People v Krivak, 168 AD3d at 982). Following the hearing, County Court "will be in a position to 'make its final decision based upon the likely cumulative effect of the new evidence had it been presented at trial'" (People v Krivak, 168 AD3d at 982, quoting People v Bellamy, 84 AD3d 1260, 1261 [2011], lv denied 17 NY3d 813 [2011]).
We reach this same conclusion as to defendant's claim of actual innocence. The sworn affidavits of the three witnesses to the victim's alleged recantations were sufficient to establish a "prima facie showing of actual innocence sufficient to warrant a hearing on the merits" (People v Pottinger, 156 AD3d 1379, 1381 [2017]; compare People v Beckingham, 116 AD3d 1298, 1299 [2014]).
Garry, P.J., Egan Jr., Reynolds Fitzgerald and Colangelo, JJ., concur.
ORDERED that the orders are reversed, on the law, and matter remitted to the County Court of Montgomery County for a hearing pursuant to CPL 440.30 (5).