People v Winston (2025 NY Slip Op 51239(U))

[*1]

People v Winston

2025 NY Slip Op 51239(U)

Decided on August 5, 2025

County Court, Columbia County

Herman, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on August 5, 2025
County Court, Columbia County

The People of the State of New York

against
Tony Winston, Defendant.

Indictment No. IND-70043-20

Chris Liberati-Conant, Esq.
Columbia County District Attorney
325 Columbia Street, Suite 260
Hudson, New York 12534
By: Brett M. Fuller, Esq., Assistant District Attorney 
Attorney for the People
Justin Bonus, Esq.
118-35 Queens Boulevard, Suite 400
Forest Hills, New York 11375
Attorney for the Defendant

Brian J. Herman, J.

In the early morning hours of August 20, 2020, Columbia County Sheriff's Deputies John Sullivan and Michael Meier conducted a routine traffic stop of a vehicle speeding along the Taconic State Parkway in the Town of Claverack, Columbia County. The deputies approached the vehicle to inquire of the driver, Ronald Miller, whereupon they observed the defendant, Tony Winston, apparently asleep in the front passenger seat with a red Nike backpack resting between his feet. The odor of marijuana emanating from the vehicle, Deputy Sullivan inquired of Miller, who acknowledged smoking marijuana in the vehicle within the hour. Deputy Sullivan asked both Miller and the defendant to step out of the vehicle to assess for Miller's impairment and to investigate the presence of illegal substances, which in 2020, included personal-use quantities of marijuana. A search of the vehicle produced marijuana in various forms and a large Ziplock bag containing a white powdery substance, proved to be cocaine in excess of one-half ounce, located inside the red backpack. Deputy Sullivan inquired of both men as to the ownership of the marijuana and the backpack. Miller advised that "everything" in the car belonged to him. [*2]Deputy Sullivan further inquired of both men as to the contents of the Ziplock bag. Both men looked at Deputy Sullivan holding the Ziplock bag and then looked away. Thereupon, Deputy Sullivan returned the Ziplock bag to the backpack, placed it in the vehicle and detained Miller, placing him in handcuffs. As Deputy Sullivan escorted Miller toward the patrol vehicle, Miller collapsed, experiencing an apparent medical episode. While attending to Miller, Deputy Sullivan twice observed the defendant endeavoring to position himself near the vehicle and directed the defendant to step away. Emergency medical services were summoned and responded. While Miller was being prepared for transport to Columbia Memorial Hospital, the defendant requested and was permitted to step away to relieve himself at the wood line beyond the grassy area adjacent to the Parkway. EMS and Miller having departed the scene, Deputy Sullivan returned to the vehicle to discover that the Ziplock bag was no longer within the backpack. After confirming that Deputy Meier had not secured cocaine, the defendant was detained and searched. With the cocaine still missing, the deputies reviewed the patrol vehicle's dashboard camera footage which showed the defendant taking the Ziplock bag from the vehicle and hiding it on his person. Deputy Meier eventually located the bag with its contents intact in the grassy area between the roadway and the wood line where the defendant had earlier relieved himself. Though the deputies had previously considered allowing the defendant to carry on with the vehicle, uncharged as to the contraband, when it was discovered the defendant retrieved and furtively deposited the cocaine in the grass, both Miller and the defendant were arrested and charged with its possession.
By indictment, Miller and the defendant were each charged with Criminal Possession of a Controlled Substance in the Third Degree (possession of a narcotic drug with the intent to sell) in violation of Penal Law §220.16(1), a Class B felony; Criminal Possession of a Controlled Substance in the Third Degree (possession of cocaine in excess of one-half ounce) in violation of Penal Law §220.16(12), a Class B felony; and Tampering with Physical Evidence in violation of Penal Law §215.40(2), a Class E felony. The indictment alleged that Miller and the defendant acted in concert in the commission of all charged offenses. Upon review of the grand jury minutes, the court (Nichols, J.) dismissed the tampering charge as against Miller.
On August 9, 2022, Milled pled guilty to the two remaining counts of Criminal Possession of a Controlled Substance in the Third Degree. In his plea allocution, Miller admitted to acting in concert with the defendant in the possession and possession with the intent to sell the cocaine seized from the vehicle.
The defendant proceeded to jury trial on the indictment. At trial, the defense relied heavily on Miller's acknowledgement of ownership of everything in the vehicle, despite his remaining silent when presented with the Ziplock bag by Deputy Sullivan. Defense counsel vigorously and extensively cross-examined all of the law enforcement witnesses as to their interpretation of Miller's remarks and, in light thereof, Deputy Sullivan and Deputy Meier's initial inclination to allow the defendant to leave the scene with the vehicle prior to his removal of the cocaine from the backpack. Miller was not called as a witness by either the People or the defense. The jury was instructed on the law of constructive possession [see People v Tirado, 38 NY2d 955 (1976)] and the automobile presumption set forth in CPL §220.25. On January 12, 2023, the defendant was found guilty of possession and evidence tampering but acquitted of possession with the intent to sell. On June 6, 2023, both Miller and the defendant were sentenced. Miller was sentenced to a determinate prison term of 1½ years on each count, to run concurrently, with two years post-release supervision. The defendant was adjudicated a second [*3]felony offender and sentenced to a determinate prison term of 15 years on the possession charge with three years post-release supervision and two to four years on the tampering charge, those sentences also to be served concurrently. The defendant's appeal as of right to the Appellate Division, Third Department, is set to be heard in the court's upcoming November 2025 Term.
The defendant now moves this court for vacatur of his conviction pursuant to CPL §§440.10(1)(g) and 440.10(1)(h) and for setting aside of his sentence pursuant to CPL §440.20(1). The People oppose.
MOTION TO VACATE JUDGMENT
CPL §440.10(1) sets forth the grounds upon which the court may vacate a judgment of conviction. Among them, that "new evidence has been discovered since the entry of a judgment based upon a verdict of guilty after trial, which could not have been produced by the defendant at the trial even with due diligence on his part and which is of such character as to create a probability that had such evidence been received at the trial the verdict would have been more favorable to the defendant; provided that a motion based upon such ground must be made with due diligence after the discovery of such alleged new evidence" (CPL §440.10[1][g]) and that "the judgment was obtained in violation of a right of the defendant under the constitution of this state or of the United States (CPL §440.10[1][h]).
Though the defendant cites CPL §440.10(1)(g) in his notice of motion, counsel neither makes reference to any purported newly discovered evidence in his supporting papers nor does he advance any argument that there now appears to exist evidence, which was previously unknown or unavailable to the defendant, that were it received at trial the verdict would have been more favorable to him. The defendant's moving papers do contain an affidavit sworn to by Miller in April 2024, wherein Miller takes full responsibility for all of the contraband found in the vehicle. The content of this affidavit, however, can hardly be characterized as newly discovered. The defendant received timely notice of Miller's statements to law enforcement pursuant to CPL §710.30, the sum and substance of which comports in all material respects with that of Miller's affidavit. These statements were, indeed, extensively and effectively highlighted by the defendant's counsel at trial, despite Miller not being called to testify by either the People or the defense. It should be noted that because Miller had not yet been sentenced, if he had been called to testify, he retained his right to remain silent (People v Rouse, 8 AD3d 982, 983 [Fourth Dept. 2004]). However, Miller was not called as a witness and there is no indication on this record that, if he were, he intended to assert his Fifth Amendment right. Accordingly, these are not relevant considerations and the Third Department's holding in People v Beach that the exculpatory affidavit of a co-defendant who had previously exercised his Fifth Amendment right may constitute newly discovered evidence is inapplicable here (People v Beach, 186 AD2d 935 [Third Dept. 1992]). In any event, had Miller been called and declined to testify, Beach would be of minimal precedential value to the defendant as, unlike in Beach, his co-defendant's claim of responsibility did not first come to light post-conviction. Here, the defendant had complete knowledge of Miller's claim of ownership of the contraband from the moment Miller uttered the words in his presence.
Whether Miller's claim of ownership was presented to the jury through his own testimony or Deputies Sullivan and Meier, the dashboard camera footage unmistakably showed the defendant retrieving and concealing the cocaine on his person. At trial, the defendant argued that he "innocently and temporarily possessed" the drugs to avoid being swept within the ambit of Miller's criminality. The jury was obviously unpersuaded as reflected by their verdict of [*4]guilty as to possession under Penal Law §220.16(12). It is also apparent to the court that the jury, in their province, ascribed a measure of weight to Miller's claim of ownership of the contraband, finding the defendant not guilty of possession with intent to sell under Penal Law §220.16(1).Accordingly, the court finds that the defendant has also failed to demonstrate a probability that, were the court to have received testimony of Miller consistent with his affidavit, the verdict would have been more favorable to him (see People v Smith, 177 AD3d 1190, 1192 [Third Dept. 2019]). Insofar as any claim of newly discovered evidence is belied by the record, the grant relief sought pursuant to CPL §440.10(1)(g) must be denied and no hearing is required (CPL §440.30[4][c]).
The defendant seeks relief under CPL §440.10(1)(h) on grounds of actual innocence and insufficiency of the evidence supporting his conviction on the possession charge. In his moving papers, the defendant asserts that it is "undisputed that [the defendant] never possessed drugs at all." Contrary to the defendant's assertion, the record is replete with evidence of the defendant's possession of narcotics. Legally sufficient evidence was received supporting theories of the defendant's actual, constructive and presumptive possession. To the extent that the defendant now argues that an alternate construction of the record reflects his actual innocence, such arguments are at this juncture beyond the scope of CPL Article 440 review.
Pursuant to CPL §440.10(2)(b), the court must deny a motion to vacate a judgment when "the judgment is, at the time of the motion, appealable or pending on appeal, and sufficient facts appear on the record with respect to the ground or issue raised upon the motion to permit adequate review thereof upon such appeal unless the issue raised upon such motion is ineffective assistance of counsel." The court finds that the facts and circumstances underlying the defendant's actual innocence and evidentiary claims are sufficiently contained in the record so as to allow the Appellate Division to review, consider and render a decision thereon in the upcoming November Term (see People v Spradlin, 188 AD3d 1454, 1460 [Third Dept. 2020]). Accordingly, that aspect of the defendant's motion seeking relief pursuant to CPL §440.10(1)(h) must be denied.

MOTION TO SET ASIDE SENTENCE
Sentencing proceedings were held before this court on June 26, 2023. Prior to commencement of the proceedings, the People filed with the court a predicate felony statement alleging that on March 6, 2006, the defendant was convicted of Robbery in the Second Degree, a Class C felony, in Supreme Court, New York County, upon which conviction he was sentenced and continuously incarcerated for 15 years. Over the defendant's objection, he was sentenced as a second felony offender. The defendant now moves for setting aside of his sentence, arguing the Supreme Court's holding in Erlinger v United States (602 US 821 [2024]) — decided one year after his sentence was pronounced — precludes the court from rendering the factual findings necessary to apply the tolling provisions of Penal Law §70.06(1)(b)(v) in adjudicating him a second felony offender. 
In Apprendi v New Jersey (530 US 466 [2000]), the United States Supreme Court held that constitutional due process requires that any factual determination, other than the fact of a prior conviction, that enhances a prison sentence beyond the prescribed statutory maximum must be made by a jury upon the basis of proof beyond a reasonable doubt (id. at 490). The exception for prior convictions is derived from the United States Supreme Court's holding in Almendarez-Torres v United States (523 US 224 [1998]). The court in Apprendi stressed the limited effect of Almendarez-Torres, stating, "[w]ith that exception, we endorse the statement of the rule . . ." that [*5]"[i]t is unconstitutional for a legislature to remove from the jury the assessment of facts that increase the prescribed range of penalties to which a criminal defendant is exposed" (Apprendi, 530 US at 490). In the years since Apprendi was decided, courts and legislatures across the country have wrestled with which facts incidental to a prior conviction, beyond the crime and its elements, lie within the factfinding purview of the court for sentencing enhancement purposes. With its decision in Erlinger, the United States Supreme Court answered this question clearly, succinctly and emphatically: "none."
"Under [the Almendarez-Torres] exception, a judge may do no more, consistent with the Sixth Amendment, than determine what crime, with what elements, the defendant was convicted of. We have reiterated this limit on the scope of Almendarez-Torres over and over to the point of downright tedium" (Erlinger, 602 US at 838). "Virtually any fact that increases the prescribed range of penalties must be resolved by a unanimous jury beyond a reasonable doubt or freely admitted in a guilty plea" (id. at 822; citing Apprendi, 530 US at 490). The holding in Erlinger, distilled to a general principle, is that Almendarez-Torres is the only Apprendi exception and that any expansion of Almendarez-Torres beyond the existence of a conviction is an infringement upon constitutional due process.
After Erlinger, a flurry of litigation ensued in proceedings at the pre and post-sentencing stages. Though the Appellate Divisions have yet to address Erlinger's impact, this court agrees with the several trial courts of this State interpreting Erlinger as applicable to any fact, beyond the existence of a conviction,[FN1]
which determines a predicate felon adjudication, including tolling determinations rendered pursuant to Penal Law §70.06(1)(b)(v) (see People v Hernandez, 2025 WL 1659277 [Sup Ct, NY County 2025]; People v Sabater, 86 Misc 3d 181 [Sup Ct, NY County 2024]; People v Lopez, 85 Misc 3d 171 [Sup Ct, NY County 2024]; People v Banks, 85 Misc 3d 423 [Sup Ct, NY County 2024]).
Opinions though, have differed. In People v Berry, the Queens County Supreme Court held that, despite Erlinger, "[t]he facts necessary to determine tolling . . . continue to fall within the Almendarez-Torres exception to Apprendi" (People v Berry, 2025 WL 1538012 [Sup Ct, Queens County 2025]). However, as observed by Judge Newbauer in Hernandez, Erlinger dictates that tolling determinations for the purpose of predicate felony adjudications must be made by a jury, not a judge (People v Hernandez, 2025 WL 1659277 at 3). In this court's view, the language employed by the Supreme Court in Erlinger, to wit: "may do no more," "over and over," "downright tedium," can only be interpreted to once-and-for-all expressly forbid even the incremental expansion of Almendarez-Torres. To read Erlinger otherwise is to ignore it.
As such, it is the determination of this court, in accordance with the United States Supreme Court's holding in Erlinger, that as a matter of due process, tolling determinations for the purpose of predicate felony adjudications are beyond the factfinding authority of the sentencing judge.
The People have raised the question of Erlinger's retroactive effect, if any. The People astutely note that both Nassau County and New York County Supreme Courts have held that Erlinger is not retroactive (People v Rodney, 224 NYS3d 332, 336-337 [Sup Ct, NY County [*6]2024]; and People v Taylor, 224 NYS3d 345, 351 [Sup Ct, Nassau County 2024]). It should be noted that the question of retroactivity as to the defendants in Rodney and Taylor turned on the fact that their convictions became final once their appeals were exhausted (see People v Rodney, 224 NYS3d 332 at FN1). The defendant's direct appeal has not yet been heard. For this reason, his conviction has not yet become final and applying Erlinger to his sentence is not a retroactive application (see People v Hernandez, 2025 WL 1659277 at 3; Griffith v Kentucky, 479 US 314 [1987]).
Insofar as the defendant's status as a second felony offender is premised on his having been incarcerated for a period of time alleged to have sufficiently tolled and extended the ten-year period of Penal Law §70.06(1)(b)(v), the facts pertaining to that incarceration and tolling must, under Erlinger, be found by a jury beyond a reasonable doubt. Since New York law does not permit jury trials on these questions (see CPL 400.21[7][a] ["a hearing pursuant to this section must be before the court without a jury"]; People v. Lopez, 85 Misc 3d at 182-189), the defendant cannot, under Erlinger, be lawfully sentenced as a second felony drug offender unless he "freely admitted" these facts (Erlinger, 602 US at 834). 
In Hernandez, the defendant, during the pendency of his direct appeal, moved to be resentenced on Erlinger grounds. At sentencing, the defendant admitted the factual allegations in the predicate felony statement were true. In considering whether to apply Erlinger to the defendant's non-final conviction, the Supreme Court held that the defendant's failure at sentencing to challenge the constitutionality of his adjudication as a predicate felon under Apprendi constituted a waiver of this right and, therefore, forecloses sentencing relief under Erlinger (People v Hernandez, 2025 WL 1659277 at 4). "Since he failed to do so during sentencing, he cannot now belatedly raise the constitutional challenge" (id.). 
At sentencing here, the court (Nichols, J.) and the defendant, having been duly sworn, engaged in the following colloquy:
THE COURT: So, Mr. Winston, the predicate felony statement has been prepared by the People. And you've had an opportunity to review that with your lawyer, Mr. Galvin. With respect to the predicate felony statement, what happens, Mr. Winston, because of your conviction for a violent felony here in the State of New York, that does increase the sentencing parameters. In other words, what you would be exposed to on a conviction after a jury trial of one count of criminal possession of a controlled substance, a B drug felony, as well as tampering with physical evidence. Let me ask, Mr. Winston, in fact, were you convicted on or about March 6, 2006, in New York County Supreme Court of a charge of Robbery in the Second Degree, and that is a Class C violent felony, and then an authorized sentence of incarceration in excess of one year? In fact, you were sentenced to 15 years in state prison, is that correct?
THE DEFENDANT: Yeah.
[ . . . ]
THE COURT: Let me ask, Mr. Winston, do you controvert the facts that are set forth in the statement presented by the People beyond that, and do you in any way challenge that conviction being unconstitutional?
THE DEFENDANT: Excuse me, I didn't understand.
THE COURT: Well, take a moment and speak to Mr. Galvin.
[Whereupon, a discussion between the defendant and his counsel was had.]
MR. GALVIN: Okay.
THE DEFENDANT: No, I ain't got nothing to do with that.
THE COURT: I'm sorry, I didn't hear you.
THE DEFENDANT: No, I ain't got nothing. No.
THE COURT: All right. So based on the admissions of Mr. Winston on the uncontroverted statements in the predicate felony statement by the People, and, in fact, I do find Tony Winston is a prior violent felon for the purposes of sentencing today.
At this point, the defendant interjected,
THE DEFENDANT: I would like to take that back; yes, I'm challenging that, because I didn't quite —
THE COURT: You're what?
THE DEFENDANT: I'm — you said, am I challenging this prior conviction anytime, anywhere? Are we on the record? I mean, I'm challenging this, yes.
THE COURT: Mr. Galvin, what is the basis of the challenge of the constitutionality of that prior conviction?
MR. GALVIN: I do not know, Your Honor. THE COURT: You served 15 years in prison?
The sentencing minutes attribute the next words uttered, "I don't recollect," to Mr. Galvin. This is perhaps erroneous, as it would appear to the court that the defendant was responding to the court's direct inquiry. Regardless, whether from the mouth of the defendant himself or Mr. Galvin on his behalf, this cannot possibly be construed as an admission to any fact or waiver of any right. The court concluded,
THE COURT: I am going to move forward with the sentencing. Nothing Mr. Winston has put on the record arises to the level of any plausible challenge of [the] constitutionality of that prior conviction. The [predicate felony] statement is clear. It's in the presentence report. Part of his criminal history. So, Mr. Galvin, I'll leave it to you to make any post-judgment motions you may wish relative to his prior convictions, as well [*7]as being able to then resentence if that motion is successful eliminating his prior violent felony conviction. So, with that, I'm going forward over the objection of the defense.
Despite the defendant's expressed desire to challenge his prior conviction, no hearing pursuant to CPL §400.21 was held. 
The court takes no issue with the rationale employed by the Supreme Court in Hernandez. That being said, the court cannot conclude on the basis of the foregoing colloquy that the defendant waived any challenges whatsoever, including an Apprendi challenge, to his adjudication as a predicate felon. This finding is strongly supported by the court's expressed willingness to entertain future challenges on the issue. Unlike the defendant in Hernandez, in the court's mind, the defendant's rights in this regard have been sufficiently preserved so as to apply Erlinger to his non-final conviction. 
Accordingly, it is hereby
ORDERED that the defendant's motion to vacate the judgment of conviction pursuant to CPL §§440.10(1)(g) and 440.10(1)(h) is denied; and it is further
ORDERED that the defendant's motion to set aside his sentence as a second felony offender is granted; and it is further
ORDERED that the parties are directed to appear for sentencing before this court on October 1, 2025 at 9:30 a.m.; and it is further
ORDERED that the Columbia County Department of Probation shall prepare and file with the court a new pre-sentence investigation report in advance of the sentencing date.
This constitutes the decision and order of the court.
Dated: August 5, 2025
Hudson, New York
Hon. Brian J. Herman
County Court Judge
Papers Considered:
Indictment No. IND-70043-20
Notice of Motion, dated January 31, 2025
Memorandum of Justin Bonus, Esq., dated January 31, 2025, with exhibits
Affirmation in Opposition of Brett M. Fuller, Esq., affirmed March 13, 2025, with exhibit
Reply Memorandum of Justin Bonus, Esq., dated April 24, 2025
Affidavit of Ronald Miller, sworn to March 2, 2023
CPL §710.30 Notice, dated August 28, 2020, People v Ronald Miller
New York State Arrest Report, dated August 20, 2020, People v Ronald Miller
New York State Arrest Report, dated August 20, 2020, People v Tony Winston
New York State Incident Report, dated August 20, 2020, People v Ronald Miller and Tony Winston
Columbia County Sheriff's Office Seized Property Report, dated August 20, 2020
Grand Jury Minutes, October 21, 2020, People v Ronald Miller and Tony Winston
Transcript of Proceedings, August 9, 2022, People v Ronald Miller and Tony Winston
Transcript of Trial Proceedings, January 5, 2023 — January 12, 2023, People v Tony Winston
Transcript of Sentencing Proceedings, June 26, 2023, People v Ronald Miller and Tony Winston

Footnotes

Footnote 1:This includes the jurisdiction in which the defendant's crime occurred and its date in order to ascertain what legal elements the government had to prove to secure a conviction in that place at that time (Erlinger, 602 US at 839).